## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| AUSTIN KUZNIK, *Individually and On Behalf of All Others Similarly Situated*, ) ) ) Plaintiff, ) ) v. ) ) HOOTERS OF AMERICA, LLC, ) HOA RESTAURANT HOLDER, LLC, ) ) Defendants. ) | Case No. 1:20-cv-01255 |

## **ORDER & OPINION**

Before the Court are Defendants' Motion to Dismiss or Stay Plaintiff's Class Action Complaint ("Motion to Dismiss or Stay") (doc. 6) and Motion for Leave to File a Reply Brief in Support of the Motion to Dismiss or Stay ("Motion for Leave to File Reply") (doc. 14). Plaintiff has timely responded to both motions, so they are ripe for review. (Doc. 12, 15). For the reasons set forth below, Defendants' Motion to Dismiss or Stay (doc. 6) is GRANTED IN PART and DENIED IN PART. The Court will STAY proceedings pending arbitration. Defendants' Motion for Leave to File Reply (doc. 14) is GRANTED.

## BACKGROUND

I. **The Complaint**[1]

Plaintiff Austin Kuznik worked as a crewmember at a Hooters restaurant from November 2016 to June 2018. (Doc. 1-1 at 10). Throughout this period, Defendants Hooters of America, LLC and HOA Restaurant Holder, LLC required employees to "clock in" and "clock out" of work each day by scanning their fingerprints on biometric timekeeping devices. (Doc. 1-1 at 8, 13, 15). Plaintiff claims Defendants, through their fingerprint-scanning timekeeping system, knowingly captured, collected, recorded, and stored his unique biometric identifiers without first obtaining his informed consent. (Doc. 1-1 at 10, 16). To this day, he remains unaware of the status of the biometric information Defendants collected from him; he was never informed of any policies regarding Defendants' retention of his biometric data, whether they would ever permanently delete his biometric information, or whether his fingerprint data was disclosed to third-parties such as Defendants' out-of-state payroll or time clock software provider. (Doc. 1-1 at 10-11). Based on these allegations, Plaintiff filed a proposed class action on behalf of himself and other Hooters employees, claiming Defendants violated various provisions of the Illinois Biometric Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. (Doc. 1-1 at 6).

Plaintiff filed suit in Illinois state court on May 18, 2020. (Doc. 1-1 at 6). Defendants subsequently removed the case to federal court pursuant to the Class

---

[1] Because this Court must accept well-pleaded facts as true when reviewing 12(b)(6) motions to dismiss, *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018), the facts in this section are drawn from the Complaint (Doc. 1-1 at 6–20). The procedural history of the case is summarized from the docket.

Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) (doc. 1), then filed the instant Motion to Dismiss or Stay (doc. 6). Seeking to enforce an arbitration agreement, Defendants move for Rule 12(b)(3) dismissal or a stay of the case pursuant to 9 U.S.C. § 3. In the alternative, they argue the complaint should be dismissed for failure to state a claim under Rule 12(b)(6). In response, Plaintiff argues the arbitration agreement is voidable because he signed it as a minor, and he contends his complaint is otherwise sufficient to withstand dismissal.

## II.    The Arbitration Agreement[2]

Defendants argue Plaintiff is required to arbitrate his claims under the "Hooters of America, LLC Arbitration Agreement and Waiver of Jury Trial" contract ("Arbitration Agreement") he electronically signed in November 2016 as part of the onboarding process for new employees. (Doc. 8-1 at 2; Doc. 8 at 2). At the time of signing, Plaintiff was a minor aged 17.5 years old. (Doc. 7 at 11).

The Arbitration Agreement provides, in relevant part:

> . . . Company and Individual agree to resolve any and all disputes or claims each may have against the other which relate in any manner whatsoever as to Individual's employment. . . by binding arbitration pursuant to the JAMS Comprehensive Arbitration Rules & Procedures ("Rules") of Judicial Arbitration and Mediation Services, Inc ("JAMS").
>
> . . . Company and Individual expressly agree that the Federal Arbitration Act governs the enforceability of any and all of the

---

[2] The information in this section is drawn from Defendants' Affidavit (Doc. 8), the attached Arbitration Agreement (Doc. 8-1), and Defendants' Reply (Doc. 14-1). In evaluating a motion to dismiss on the basis of an arbitration agreement (properly characterized as a 12(b)(3) motion to dismiss for improper venue), the Court "takes all the allegations in the complaint as true unless contradicted by the defendant's affidavit and may examine facts outside the complaint." *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1094 (N.D. Ill. 2015).

> arbitration provisions of this Agreement. . . *Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator.* Likewise procedural questions which arise out of the dispute and bear on its final disposition are matters for the arbitrator to decide.

(Doc. 8-1 at 2) (emphasis added). The Rules of Judicial Arbitration and Mediation Services, Inc. ("JAMS Rules") to which the Agreement refers include the following provision:

> Jurisdictional and *arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement* under which Arbitration is sought. . . shall be submitted to and ruled on by the Arbitrator.

(Doc. 14-1 at 4) (emphasis added).

## DISCUSSION

### I.  Motion for Leave to File Reply

Defendants move for leave to file a Reply in support of their Motion to Dismiss or Stay. (Doc. 14). Reply briefs in this context are allowed only with leave of the Court. CDIL-LR 7.1(B)(3). "Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in his response to the motion, and the Court finds that a reply from the moving party would be helpful to its disposition of the motion." *Zhan v. Hogan*, No. 4:18-CV-04126, 2018 WL 9877970, at *2 (C.D. Ill. Dec. 18, 2018) (quoting *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011)). "The Court does not typically permit the moving party to file a reply in order to introduce new arguments or evidence that could have been included in the motion itself, or to rehash arguments made in the motion." *Nat. Res.*

*Def. Counsel v. Illinois Power Res., LLC*, No. 1:13-CV-01181, 2016 WL 9650981, at *6 (C.D. Ill. Nov. 2, 2016).

Defendants' proposed Reply responds to Plaintiff's "unexpected interpretation" of the Arbitration Agreement's "gateway clause." (Doc. 14 at 1). Plaintiff argues Defendants should have anticipated his "commonsense interpretation" and objects to the Reply's introduction of evidence that could have been incorporated in Defendants' prior submission. (Doc. 15 at 3). Ideally, Defendants should have included the language of the JAMS Rules in their original Motion; however, because Plaintiff did not cite any legal authority supporting his interpretation of the "gateway clause," his specific argument raises an "unexpected issue[]." *Zhan*, 2018 WL 9877970, at *2. Defendants' proposed Reply also responds solely to Plaintiff's interpretation of the "gateway clause" and avoids "rehash[ing]" their previous arguments. *Nat. Res. Def. Counsel*, 2016 WL 9650981, at *6. Under these circumstances, the Court finds the additional briefing on this limited question "helpful to its disposition" of the Motion to Dismiss or Stay. *Zhan*, 2018 WL 9877970, at *2. Defendants' Motion for Leave to File a Reply Brief is therefore granted.

## II.  Motion to Dismiss or Stay

Defendants argue this case should be dismissed or stayed because the parties agreed to arbitration, while Plaintiff argues the Arbitration Agreement is invalid because he signed it as a minor. (Doc. 7 at 7; Doc. 12 at 4–5). The dispositive question before the Court in this case is narrow: is the validity of the Arbitration Agreement a matter for the Court or an arbitrator to decide? For the following reasons, the Court finds it is reserved for the arbitrator.

5

## A. Legal Standards

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). The FAA requires courts to "place arbitration agreements on an equal footing with other contracts[] and enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (citations omitted).

"A motion to dismiss based on a contractual arbitration clause is appropriately 'conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).'" *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007)). In reviewing a Rule 12(b)(3) motion, a district court is "not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment." *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). This allows the Court to consider the arbitration agreement itself when deciding whether a case belongs in arbitration. *See Johnson v. Orkin, LLC*, 556 F. App'x 543, 544 (7th Cir. 2014) (citing *Faulkenberg*, 637 F.3d at 809–810).

As an alternative to dismissal, Defendants also move to stay the proceedings pursuant to Section 3 of the FAA, 9 U.S.C. § 3. (Doc. 6, Doc. 7 at 21). That section

provides: the Court, "upon being satisfied that the issue involved in [the] suit or proceeding is referable to arbitration under [a written arbitration] agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. The Seventh Circuit holds such a stay is mandatory for arbitrable issues, *Volkswagen of Am., Inc. v. Süds of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir.2007), and a stay is usually more appropriate than dismissal, *Cont'l Cas. Co.*, 417 F.3d at 732 n.7 ("We have noted that the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration rather than to dismiss outright.").

    B.    *The "Gateway Clause" and Arbitration of Arbitrability*

"The division of labor between courts and arbitrators is a perennial question in cases involving arbitration clauses." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741 (7th Cir. 2010). By default, it is for courts to decide "gateway matters, such as whether the parties have a valid arbitration agreement." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue."). However, the Supreme Court has held parties may instead "agree to have an arbitrator decide, not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v.*

7

*Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). Where parties include such a "gateway" or "delegation" clause, it is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr.*, 561 U.S. at 70.

### 1. Clear and Unmistakable Delegation

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e] evidence' that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations in original) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). Here, the Arbitration Agreement explicitly states "questions of arbitrability . . . shall be decided by the arbitrator." (Doc. 8-1 at 2). It also incorporates by reference the JAMS rule providing "arbitrability disputes . . . shall be submitted to and ruled on by the Arbitrator." (Doc. 14-1 at 4). "[T]he overwhelming weight of authority holds that incorporation of JAMS Rules constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability."[3] *Atl. Specialty Ins. Co. v. Anthem, Inc.*, No.

---

[3] *See, e.g., Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 528 (4th Cir. 2017), *abrogated on other grounds by Henry Schein*, 139 S. Ct. 524; *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017); *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 536 (5th Cir. 2016); *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013); *Wynn Resorts, Ltd. v. Atl.–Pac. Capital, Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012). District courts within the Seventh Circuit, including one in this District, have also held the same where arbitration agreements incorporate by reference the comparable American Arbitration Association rules. *See, e.g., Zhan*, 2018 WL 9877970, at *10 (C.D. Ill. Dec. 18, 2018) ("The Court adopts the majority position and holds that the arbitration provision's reference to the AAA rules

1:19-CV-03589, 2020 WL 2526000, at *9 (S.D. Ind. May 18, 2020). The "clea[r] and unmistakabl[e]" delegation requirement is therefore doubly satisfied here, as both the Arbitration Agreement itself and the JAMS provisions it incorporates contain delegation clauses.

### 2. Severability

The Supreme Court has held a "gateway" or "delegation" clause is legally severable from the arbitration agreement in which it is contained, meaning a federal court must enforce a valid delegation clause even if the underlying arbitration agreement is potentially void. *See Rent-A-Ctr.*, 561 U.S. at 71–72. Unless there is a challenge "to the delegation provision *specifically*," the Court must "treat it as valid" under the FAA and "leav[e] any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72 (emphasis added).

In his submissions, Plaintiff does not raise any challenge to the enforceability of the "gateway clause" specifically. He argues only that the Arbitration Agreement *as a whole* is voidable due to his minority at the time of contract. (Doc. 12 at 2). The Court is therefore bound to enforce the "gateway" clause and leave Plaintiff's challenge to the validity of the Arbitration Agreement for the arbitrator. *See Rent-A-Ctr.*, 561 U.S. at 72.

---

indicates that the parties intended to delegate to an arbitrator the power to decide questions about 'the existence, scope, or validity of the arbitration agreement' "); *Schroder v. Teufel*, No. 17-C-6119, 2017 WL 5569758, at *4 (N.D. Ill. Nov. 20, 2017); *Cooks v. Hertz Corp.*, No. 3:15-CV-0652, 2016 WL 3022403, at *4 (S.D. Ill. Apr. 29, 2016); *Gilman v. Walters*, 61 F. Supp. 3d 794, 801 (S.D. Ind. 2014).

### 3. Questions of Arbitrability

Plaintiff argues, without citing any legal authority, that the voidability of the Arbitration Agreement due to his minority at the time of contracting is not a "question of arbitrability" within the meaning of the Parties' contract. (Doc. 12 at 4). Under Plaintiff's interpretation of the "gateway clause," "questions of arbitrability" are questions regarding the *scope* of the Arbitration Agreement, not its validity. (Doc. 12 at 3–4). This interpretive argument is contrary to the plain meaning of the term "arbitrability" as recognized by courts, however. According to the Seventh Circuit, "[q]uestions of arbitrability involve 'gateway matters, such as *whether parties have a valid arbitration agreement.*' " *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 506 (7th Cir. 2018) (emphasis added) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013)); *see also Ingram v. Neutron Holdings, Inc.*, No. 3:20-CV-00037, 2020 WL 2733726, at *6 (M.D. Tenn. May 26, 2020) (holding that whether arbitration provision is void due to party's minority at the time of contracting is a "question of arbitrability").

Nothing in the Arbitration Agreement suggests the Parties intended to deviate from the ordinary definition of "questions of arbitrability" in their contract. To the contrary, the Arbitration Agreement defines "questions of arbitrability" broadly as "whether an issue is subject to arbitration under this Agreement." (Doc. 8-1 at 2). This definition plainly encompasses questions of scope ("whether *an issue* is subject to arbitration under this Agreement"), as well as questions of validity ("whether an issue is subject to arbitration under *this Agreement*"). To eliminate any doubt, the JAMS Rules incorporated in the Arbitration Agreement by reference specifically

provide that "arbitrability disputes" "include[e] disputes over the. . . validity. . . of the agreement under which Arbitration is sought." (Doc. 14-1 at 4). All this compels the conclusion that the Arbitration Agreement's "gateway clause" is a delegation provision, plain and simple. It "clearly and unmistakably" delegates all questions of arbitrability, including questions of the Arbitration Agreement's validity or voidability, to an arbitrator.

### 4. Stay Pending Arbitration

When an agreement "delegates the arbitrability questions to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 529. In this case, Plaintiff's challenge to the validity of the Arbitration Agreement raises a question that has been reserved for the arbitrator by contract. The Court's conclusion that the Parties must arbitrate this question of arbitrability should not be read to pass judgment on the merits of Plaintiff's arguments regarding the voidability of the Agreement due to minority; the enforcement of the "gateway clause" does not "banish these arguments," it "simply assign[s] the responsibility for evaluating them to an arbitrator." *Janiga*, 615 F.3d at 744.

Pursuant to § 3 of the FAA, the Court, now "satisfied that the issue involved in [this] suit or proceeding is referable to arbitration," shall "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. The Court finds a stay preferable to 12(b)(3) dismissal in light of Seventh Circuit precedent favoring stays, *see Cont'l Cas. Co.*, 417 F.3d at 732 n.7, and in consideration of Plaintiff's request that the Court grant a stay instead of dismissal (doc. 12 at 14 n.7). Because the Court finds

11

this case referable to arbitration, it does not reach Defendants' arguments for Rule 12(b)(6) dismissal of the Complaint in the alternative.

## Conclusion

Defendants' Motion to Dismiss or Stay (doc. 6) is GRANTED IN PART and DENIED IN PART. The Court will STAY proceedings pending arbitration, pursuant to 9 U.S.C. § 3. Defendants' Motion for Leave to File Reply (doc. 14) is GRANTED.

SO ORDERED.

Entered this 7th day of October 2020.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
